UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DEONCA WILLIAMS,**<br><br>Plaintiff,<br><br>v.<br><br>**FORT LEE PUBLIC SCHOOLS,**<br><br>Defendants. | Civ. No. 2:11-06314 (WJM)<br><br>**CONSOLIDATED OPINION** |
| **DEONCA WILLIAMS,**<br><br>Plaintiff,<br><br>v.<br><br>**FORT LEE EDUCATION ASSOCIATION and FORT LEE PUBLIC SCHOOLS,**<br><br>Defendants. | Civ. No. 2:12-03853 (WJM) |

**WILLIAM J. MARTINI, U.S.D.J.:**

*Pro se* Plaintiff Deonca Williams filed this action against Fort Lee Board of Education (improperly pleaded as Fort Lee Public Schools) ("FLBE") and Fort Lee Education Association ("FLEA," and together with FLBE, "Defendants"), alleging various wrongdoings in connection with her brief employment at Fort Lee High School. This matter comes before the Court on Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b).

1

For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED**, and Williams's Complaints are **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

FLBE hired Williams to teach Spanish at Fort Lee High School for the 2010-2011 school year. (Cert. of Counsel, Ex. D, ECF No. 27-1.) The Director of Human Resources of the Fort Lee Public School District provided Williams with new employee information, and Plaintiff attended orientation with the other newly hired employees. (Cert. of Counsel, Ex. K ¶¶ 4-9, ECF No. 27-1.) On September 7, 2010, the first day of school, administrators determined that, due to overcrowding issues, Williams would need to switch classrooms with a history teacher during third period. (Cert. of Counsel, Ex. I ¶¶ 4-8, ECF No. 27-1.) These types of changes to classroom assignments were not uncommon at Fort Lee High School and were made at the commencement of each school year. (Cert. of Counsel, Ex. I ¶¶ 4-8, Ex. H ¶ 4, Ex. L ¶ 5, ECF No. 27-1.) Here, the switch was necessary because Williams had a larger classroom than the history teacher and, during third period, had a much smaller class. (Cert. of Counsel, Ex. I ¶ 8, ECF No. 27-1.) According to Priscilla Church, the school principal, Williams initially resisted the change. However, Williams eventually moved her class to the smaller room. (Cert. of Counsel, Ex. I ¶ 9, ECF No. 27-1.)

The next day, September 8, 2010, at 4:22 a.m., Williams sent an email to several school officials stating: "I regret to inform you that effective today I am unable to change rooms during period [three]." (Cert. of Counsel, Ex. E, Ex. I ¶ 10, Ex. L ¶¶ 3-4.) Later that morning, at the end of second period, Principal Church and Officer Vincent Buda

were conducting an administrative tour of the school and saw that students from both Williams's Spanish class and the history class were gathered around Williams's classroom. (Cert. of Counsel, Ex. I ¶ 12, Ex. J ¶ 4.) Principal Church quickly proceeded inside, where Williams informed Principal Church that she would not be moving to the smaller room. (Cert. of Counsel, Ex. I ¶ 13-16.) Principal Church states that during this discussion, which took place in front of the students, Williams became angry, belligerent, and accusatory. (Cert of Counsel, Ex. I; ¶ 9.)

Principal Church eventually convinced Williams to leave her classroom to discuss the issue. (Cert. of Counsel, Ex. I ¶¶ 18.) At Williams's request, FLEA President Gary Novosielski then spoke privately with Williams. (Cert. of Counsel, Ex. I ¶ 16-17, Ex. L ¶¶ 3-10.) He recommended that she comply with the request to switch rooms. (Cert. of Counsel, Ex. I ¶ 16-17, Ex. L ¶¶ 3-10.) Superintendent Raymond Bandlow then arrived and attempted to talk to Williams, who was on her cellphone. (Cert. of Counsel, Ex. I ¶¶ 17-18, Ex. H ¶ 5, Ex. J ¶¶ 7-8.) Williams refused to hang up her cellphone to speak with him. (Cert. of Counsel Ex. I ¶ 18, Ex. H ¶ 5, Ex. J ¶¶8, Ex. L, ¶ 11.) After several attempts to speak with Williams, Dr. Bandlow asked her to leave the building and told her that that he planned to recommend terminating her employment for insubordination. (Cert. of Counsel, Ex. I ¶¶ 18-20, Ex. J ¶¶ 8-11, Ex. L ¶ 12.) At Dr. Bandlow's request, Officer Buda then escorted Williams out of the building. (Cert. of Counsel, Ex. I ¶¶ 18-20, Ex. J ¶¶ 8-11, Ex. L ¶ 12.) Plaintiff had her handbag with her when she left and was told to contact Principal Church to set up an appointment to retrieve her belongings from

her classroom. (Cert. of Counsel, Ex. I ¶¶ 20-21.) She never set up an appointment to retrieve her belongings. (Cert. of Counsel, Ex. I ¶¶ 20-21.)

In a letter dated that same day, Dr. Bandlow informed Williams that she was being placed on paid administrative leave and that he would recommend terminating her employment effective October 14, 2010 at the next FLBE meeting. (Cert. of Counsel, Ex. F, Ex. H ¶ 9.) FLBE subsequently terminated Williams's employment for insubordination, and she received pay until October 14, 2010. (Cert. of Counsel, Ex. G.)

Plaintiff filed the instant action (Civil Action No. 2:11-cv-06341) on October 27, 2011, and a related action (Civil Action No. 2:12-cv-03853) concerning the same issues and facts on June 20, 2012. The Court consolidated these actions on July 24, 2012. (Consolidation Order, July 24, 2012, ECF No. 20.) Williams's litany of allegations include claims that she was "singled out for adverse treatment (i.e. an assassination plot etc.)," that the room change was a "scheme" intended to force her to "break the law" by leaving students unattended, and that she was "almost murdered by one of [Defendant's] police officers." (Pl.'s Compl. ¶¶ 1, 9, ECF No. 1.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual

4

dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.2d 641, 647 (3d Cir. 2007).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57.

### III. DISCUSSION

Defendants move for summary judgment on "any and all claims" that Williams pleads against them in this matter. (Def.'s Letter Rep. Br. 1, ECF No. 31.) The Court will first consider the claims alleged in the Complaint filed on October 27, 2011 (the "First Complaint"). The Court will then turn to the remaining issues from the Complaint filed June 20, 2012 (the "Second Complaint"), and Williams's Opposition to the Motion for Summary Judgment (the "Opposition Brief").

### A. The First Complaint

The First Complaint alleges six counts:

(1) Count One: Violations of the Civil Rights Act of 1964;
(2) Count Two: Defamation;
(3) Count Three: Theft of Property;
(4) Count Four: Intentional Infliction of Emotional Distress;
(5) Count Five: Records Tampering and Providing False Statements; and
(6) Count Six: Attempted Murder and Terroristic Threats.

Defendants move for summary judgment on all counts. The Court will address each count in turn.

### i. Count One: The Civil Rights Act of 1964

Plaintiff first alleges discrimination, wrongful termination, retaliation, conspiracy, and terroristic threats in violation of Title VII of the Civil Rights Act of 1964, § 701 et seq., 42 U.S.C. §2000e et seq. These allegations boil down to claims for discriminatory discharge and retaliation.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the United States Supreme Court established the basic framework for the allocation of the burden of proof in an employment discrimination case. This framework applies to both discriminatory discharge and retaliation cases. *See id.*; *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006). Under this framework, the plaintiff has the initial burden to establish a prima facie case of either discriminatory discharge or retaliation. *Id.*; *see also Robinson v. Pittsburgh*, 120 F.3d 1286, 1299 (3d Cir. 1997) (citing *Nelson v. Upsala College*, 51 F.3d 383, 386 (3d Cir. 1995)); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993).

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory – or in a retaliation case, non-retaliatory – reason for the discharge. *See Hicks*, 509 U.S. at 506-07; *Moore*, 461 F.3d at 342. If the defendant can do so, then the burden shifts back to the plaintiff to show that the defendant's articulated reason is actually a pretext for discrimination or retaliation. *Jones*, 198 F.3d at 410. To defeat summary judgment in a discrimination case, the plaintiff must point to some evidence, direct or circumstantial, which could lead a reasonable fact finder to disbelieve the employer's articulated reasons, or believe that a discriminatory reason was likely a motivating or determinative cause for the plaintiff's discharge. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). In a retaliation case, the plaintiff must produce evidence "both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Moore*, 461 F.3d at 342 (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)). This "places a difficult burden on the plaintiff." *Kautz v. Met–Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). Thus, a defendant is entitled to summary judgment on Title VII claim if she can demonstrate either that: (1) the plaintiff is unable to establish a prima facie case; or (2) if plaintiff can establish a prima facie case, the plaintiff cannot produce sufficient evidence of pretext to rebut the defendant's asserted reason for the discharge. *See Fuentes*, 32 F.3d at 764 (3d Cir. 1994); *Jalil v. Avdel Corp.*, 873 F.2d 701, 706–07 (3d Cir. 1989), *cert. denied*, 493 U.S. 1023 (1990).

Defendants, who incorrectly briefed this issue as a matter of New Jersey law and then proceeded to misstate New Jersey case law, argue that Williams failed to establish a

prima facia case under Title VII because there was a legitimate, non-discriminatory, non-retaliatory reason for her discharge. Whether there was a legitimate, non-discriminatory, non-retaliatory reason for discharge is not part of the prima facia case for either discriminatory discharge or retaliation. Rather, this element comes into play after the plaintiff has demonstrated a prima facia case, when the burden of production shifts to the defendant. Williams has made no cognizable legal argument in response to Defendants' arguments. For the purposes of this motion, the Court will assume that Williams has established a prima facia case for her Title VII claims, and consider Defendants' arguments at the proper stage of the analysis.

The Court finds that Defendants have set forth evidence of a legitimate, non-discriminatory, non-retaliatory reason for Williams's discharge. Williams repeatedly refused to abide by the directives of her supervisors to relocate her class, causing disruption for the students affected by the change. She then refused to talk to the Superintendent of Schools, Dr. Bandlow, when he attempted to discuss the situation with her. She was thus fired for insubordination, a reason that is legitimate, non-discriminatory, and non-retaliatory. *See Jalil*, 873 F.2d at 708 (finding that insubordination is a legitimate, non-discriminatory reason for discharge).

The burden now shifts to Williams to show that this reason is mere pretext for discrimination or retaliation. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *McDonnell Douglas*, 411 U.S. at 803-04; *Fuentes*, 32 F.3d at 764. She has failed to do so. The summary judgment record is devoid of any evidence whatsoever to discredit Defendants' proffered reason for Williams's discharge. Williams has provided

no affidavits, depositions or other relevant evidence to support her claims. Her mere unsubstantiated allegations are insufficient to defeat summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts"). Thus, because William has not produced any evidence to rebut Defendant's asserted legitimate, non-discriminatory, non-retaliatory reason for her discharge, Defendants are entitled to summary judgment on her Title VII claims.

### ii. Count Two: Defamation

In Count Two of her First Complaint, Williams alleges defamation. To establish defamation under New Jersey law, a plaintiff must show that the defendant (1) made a false and defamatory statement about the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault. *Mangan v. Corporate Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 204 (D.N.J. 2011) (citing *Singer v. Beach Trading Co.*, 876 A.2d 885 (N.J. App. Div. 2005)).

Defendants argue that Williams has not produced any evidence showing that they made a statement about her. The Court agrees. In support of her claim, Plaintiff points to an article on NorthJersey.com about her case. (Pl.'s Brief in Opp'n Ex. C, ECF No. 30-3.) Defendants did not write, and were not quoted in, that article. (*Id.*) In fact, the article states that a FLBE representative was asked about the pending litigation with Williams and declined to comment. (*Id.*) Defendants are thus entitled to summary judgment on Williams's defamation claim.

### iii. Count Three: Theft of Property

Williams also asserts a claim for theft on the basis that Defendants did not issue her a paycheck on September 8, 2010 and illegally seized her property from her classroom. Defendants claim that Williams received pay until October 14, 2010, the date on which her employment ended, and never set up an appointment to retrieve her class materials. Defendants have submitted sworn affidavits supporting their claims. (*See* Cert. of Counsel, Ex. I ¶¶ 20-21, Ex. G.) Williams has not submitted a single affidavit, deposition or other piece of evidence supporting her allegations. Therefore, the Court will grant summary judgment to Defendants on this claim.

### iv. Count Four: Intentional Infliction of Emotional Distress

Williams next asserts a claim for intentional infliction of emotional distress. In New Jersey, a plaintiff claiming intentional infliction of emotional distress must establish intentional and outrageous conduct by the defendant, proximate cause, and severe distress. *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988). A plaintiff must prove conduct by the defendant "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (quoting Restatement (Second) of Torts § 46, comment d). The conduct must be so atrocious that it is "utterly intolerable in a civilized community." *Id.*

Williams has produced no evidence showing that Defendants engaged in outrageous conduct. Moreover, Defendants' affidavits show that Williams was given numerous opportunities to comply with the reasonable request to switch classrooms with

another teacher for one period of the day. She repeatedly refused. Accordingly, Defendants are entitled to summary judgment on this claim.

### v. Count Five: Records Tampering and Providing False Statements

In Count Five, Williams argues that Defendants tampered with records of a phone call that she made to 911 on the morning of September 8, 2010. Williams does not identify a legal basis for this claim. The Court, which could identify no civil cause of action for tampering with records, construes her claim as alleging violations of 18 U.S.C § 1519 (criminalizing falsification of records in federal and bankruptcy proceedings), N.J. Stat. Ann. § 2C:21-4 (criminalizing falsifying or tampering records), N.J. Stat. Ann. § 2C:28-7 (criminalizing tampering with public records). Williams further argues that Defendants made misleading statements to the Department of Labor in violation of 18 U.S.C. § 1001.

Plaintiff's claims in Count Five arise from alleged violations of criminal statutes. These criminal statutes do not provide a private right of action for civil damages. *See Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001) ("New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action."). The Court will thus summary judgment to Defendants on each of these claims.

### vi. Count 6: Attempted Murder and Terroristic Threats

Finally, Williams alleges that Defendants attempted to murder her and subjected her to terroristic threats. The Court has uncovered no precedent supporting a civil action for either attempted murder or terroristic threats under either federal or New Jersey law. Similar to the claims in Count 5, these are criminal offenses that do not provide a basis for civil liability. *See* 18 U.S.C. § 1113; N.J. Stat. Ann. § 2C:5-1; N.J. Stat. Ann. § 2C:12-3. Furthermore, even assuming that a civil cause of action exists, Williams has provided absolutely no evidence supporting her allegations. Accordingly, Defendants are entitled to summary judgment on these claims.

The Court thus **GRANTS** Defendants' motion for summary judgment as it pertains to the First Complaint, and the First Complaint is **DISMISSED WITH PREJUDICE**. The Court will next address the remaining allegations from William's Second Complaint and Opposition Brief.

### B. Remaining Issues

Williams's Second Complaint alleges six Counts based on the same facts as the First Complaint. Defendants are entitled to summary judgment on the Counts alleging violations of the Civil Rights Act of 1964, defamation, and intentional infliction of emotional distress for the reasons stated above. In the three remaining Counts, Williams alleges violations of 18 U.S.C. §§ 241 and 242, hate crimes, and civil conspiracy. Because there is no legal or factual basis for any of Williams's allegations, Defendants are entitled to summary judgment on each of these claims. First, Sections 241 and 242, as well as the statutes governing hate crimes, are criminal statutes that lack private rights of action. *See* 18 U.S.C. § 245(b)(2)(b); N.J. Stat. Ann. § 2C:44-3; *Shahin v. Darling*,

606 F. Supp. 2d 525, 539 (D. Del. 2009); *Thompson v. Eva's Vill. & Sheltering Program*, Civ.A. 04-2548JAP, 2006 WL 469938 (D.N.J. Feb. 24, 2006) *aff'd*, 243 F. App'x 697 (3d Cir. 2007). Furthermore, Williams has provided no evidence supporting any underlying wrong that could provide the basis for a conspiracy. *See Earl v. Winne*, 101 A.2d 535, 544 (N.J. 1953) ("The general rule is that a conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action."). The Court thus **GRANTS** Defendants' motion for summary judgment regarding the Second Complaint, and the Second Complaint is **DISMISSED WITH PREJUDICE**.

Finally, in her Opposition Brief, Plaintiff discusses two additional causes of action, one for violations of the Conscientious Employee Protection Act, N.J. Stat. Ann. 34:19–1, *et seq.*, and the other for fraudulent conspiracy to hire. Plaintiff did not plead these theories in either her First or Second Complaint. Thus, they are not bases for liability in this case, and the Court need not address them further.

IV. **CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED** and the First Complaint and the Second Complaint are **DISMISSED WITH PREJUDICE**. An appropriate order follows.

   /s/ William J. Martini   
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 23, 2013**